UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

FILED
JAN 30 2019



Clerk, U. S. District Court
Eastern District of Tennessee
At Greeneville

IN THE MATTER OF THE SEARCH OF THE REAL )
PROPERTY LOCATED AT 280 HUMBOLDT LANE, )
GREENEVILLE, TN 37745 INCLUDING ALL )
OUTBUILDINGS AND STORAGE AREAS )
)
)
)
)
)
)

2:19-MJ-36

JUDGE CORKER

## AFFIDAVIT FOR SEARCH WARRANT

Affiant, Cameron L. Miller, Special Agent, United States Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn under oath, states as follows:

### I. INTRODUCTION

1. Your Affiant is a Special Agent with ATF, an agency of the United States Department of Justice, has been so assigned since January of 2015, and, therefore, is an officer of the United States who is empowered to conduct investigations of, and to make arrests for, the offenses enumerated in United States Code, Titles 18 and 26, and to request warrants pursuant to Rule 41 of the Federal Rules of Criminal Procedure.

2. Your Affiant has specialized training and/or experience in the area of illegal firearms possession, firearms trafficking, drug distribution, gangs, undercover operations, surveillance and debriefing informants and suspects. All references herein to any experience refers to experience gained through training, conducting firearms and controlled substances investigations, and participating in those investigations with other experienced investigators, as well as conversations with other law enforcement officers.

3. Prior to 2015, your Affiant was employed as a sworn law enforcement officer in in North Carolina for approximately seven years, including work experience as a Drug Enforcement Administration (DEA) Task Force Officer, Vice/Narcotics/Gang Detective, and Patrol Police Officer. As an ATF Special Agent, your Affiant was assigned and worked complex criminal investigations in the Puerto Rican Field Office, the St. Thomas, USVI Satellite Office, and the Memphis, TN Field Office, and is presently assigned to the Satellite Office of ATF's Nashville Field Division in Greeneville, TN.

4. Your Affiant has participated in, and has been assigned to, multiple investigations involving illegal firearms possession and manufacturing, illegal destructive device possession and manufacturing, and federal crimes of violence. Presently, your Affiant's primary assignment is to conduct investigations involving firearm offenses, firearms trafficking, violent crimes, drug trafficking, and money laundering occurring throughout the Eastern District of Tennessee. This includes, among other things, conducting investigations of organizations trafficking firearms, individuals illegally possessing or making firearms, violent gangs, firearm offenses, and narcotics violations.

5. Through training, investigations and experience, your Affiant has taken part in cases relating to the trafficking of firearms, the use and possession of firearms by persons prohibited by law, and the possession of illegal firearms and firearms parts, and is familiar with and has participated in various methods of investigations, including, but not limited to: electronic surveillance, physical surveillance, interviewing and general questioning of witnesses, use of confidential informants and use of cooperating witnesses. Your Affiant has debriefed confidential informants and cooperating witnesses regarding the habits and practices of people engaged in the illegal trafficking of firearms. Furthermore, your Affiant has conducted and participated in numerous investigations to include: crime scene investigations, collection of evidence, interviews and the execution of search warrants.

6. The details and information stated herein are based on your Affiant's training, experience, and personal knowledge, as well as a compilation of witness statements, facts, and events investigated by your Affiant, other law enforcement officers, and other Federal agencies, who investigated and confirmed their veracity or oversaw their development. The information in this affidavit is provided for the limited purpose of establishing probable cause sufficient for a search warrant. The information is not a complete statement of all the facts related to this case or a verbatim recitation of statements made.

## II. PURPOSE OF THE AFFIDAVIT

7. This affidavit is submitted in support of an application for a search warrant authorizing the search of the Tennessee warehouse location of Pyro Junkie Fireworks, Inc., 280 Humboldt Lane, Greeneville, TN (GPS coordinates 36.358680, -82.695085), which is further described or depicted in Attachments A, hereinafter, and referred to individually and/or collectively as the "Search Location."

8. Your Affiant believes that there will be evidence of the illegal possession of ammunition and firearms, in violation of 18 U.S.C. §§ 922(g)(1) and (9), the illegal making and/or possession of unregistered, and unserialized firearms (destructive devices), in violation 26 U.S.C. §§ 5861(c), (d), (f), and (i), and the illegal possession of explosives, in violation of 18 U.S.C. § 842(i) at the Search Location described in this affidavit.

## III. PROBABLE CAUSE

9. Pyro Junkie Fireworks, Inc. (hereinafter, "Pyro"), a Florida corporation, self-reports (http://www.pyrojunkiefireworks.com) as a wholesaler and retailer of consumer fireworks, which operates "mega stores," warehouses, and fireworks stands throughout the United States. Pyro's principal address is in Tampa, FL; however, Pyro maintains a warehouse at the Search Location.

Although Pyro's website identifies the location of the warehouse at 35 Apricot Lane, Chuckney (sic), TN 37641, the investigation has identified that location is closed and the warehouse operations are located a short distance away at the Search Location. No retail sales of consumer fireworks occur at the Search Location. Larry ABNER serves in the role as a caretaker of the Search Location. The Search Location consists of approximately 15.18 acres of land and includes two (2) buildings constructed of brick and steel. County tax records identify the buildings as single story, "prefab" and rectangular in shape. For purposes of easy identification, your Affiant will identify the buildings by a number. Building #1 is located near the center of the property and is the larger of the two buildings. Building #2 is a smaller building located on the north end of the parcel.

10. On or about January 28, 2019, agents from ATF received information from three (3) witnesses regarding Larry ABNER's involvement in the manufacture of firearms, possession of firearms and ammunition, and the manufacture of destructive devices using black powder as an explosive material. Two (2) additional witnesses confirmed the ABNER's residence at the Search Location.

11. Witness #1 and Witness #2 are former relatives of ABNER. Witness #1 and Witness #2 are, therefore, uniquely familiar with ABNER, have known him for many years, and have direct knowledge of where ABNER works and lives. Witness #1 and #2 advised your Affiant that ABNER works for a company called "Pyro Junkie Fireworks."

12. Witness #1 and Witness #2 stated they have known ABNER to both reside and work at the Search Location since on or about June 1, 2018. Because ABNER does not have his own transportation, Witness #2 advised that he/she had personally transported ABNER to the Search Location on one occasion within the past several months.

13. Witness #2 stated that ABNER admitted to him/her that he had "pipe bombs" and showed Witness #2 several small Skoal® cans, wrapped in black electrical tape with a fireworks fuse

inserted. ABNER also told Witness #2 that the cans were filled with black powder[1] and items to serve as "shrapnel," such as hardware nails, bolts, and pieces of metal. ABNER told Witness #2 he had these "pipe bombs" as protection against possible intruders coming to the Search Location.

14. Witness #1 stated that ABNER was previously married. On or about December 3, 2018, ABNER's former spouse died in Sullivan County, TN, as the result of an apparent suicide by a self-inflicted gunshot wound. Witness # 1 and Witness #2 stated that ABNER blamed them (Witness #1 and Witness #2) and other members of their family for the suicide. Witness #1 and Witness #2 stated ABNER became erratic and threatened to shoot Witness #1 and Witness #2 in the head, as in the same manner ABNER's former spouse died.

15. A friend of ABNER's former spouse, and acquaintance of ABNER, Witness #3, also provided information to this investigation. Witness #3 is a former military servicemember who was an Ammunition Specialist and has familiarity with weapons and ammunition. Witness #3 stated that ABNER works for a company called "Pyro Junkie Fireworks," which is located at the Search Location. Witness #3 described the Search Location is two industrial buildings near each other, with ABNER sleeping in one building (Building #2), and using the kitchenette, television, and videos games in the other building (Building #1). Witness #3 stated that ABNER does not have transportation and previously relied on his former spouse for mobility.

16. On or about December 4, 2018, Witness #3 went to the Search Location to console ABNER following the death of his former spouse. Witness #3 advised that when he/she went to the Search Location on December 4, 2018, ABNER came from Building #2 and showed him/her several objects that he referred to as "pipe bombs." Witness #3 describes the devices as small Skoal® cans, wrapped in black electrical tape with a fireworks fuse embedded. ABNER told Witness #3 the "pipe

---

[1] Commercial black powder is exempt from federal explosives regulations if it is in quantities of less than 50 pounds and intended for use solely in sporting, recreational, or cultural purposes in antique firearms as defined in 18 U.S.C. § 921(a)(16) or antique devices exempted destructive devices .

bombs" were filled with black powder and metal items to act as "shrapnel." During the same visit, ABNER took the "pipe bombs" to an open area on the curtilage of the Search Location. ABNER lit the fuse of the device and placed a large cover on top. After several seconds, the device detonated, causing the cover to shoot straight up approximately twenty feet in the air. Witness #3 advised ABNER repeated the detonation of the devices with a cover several more times that day. Witness #3 took two video recordings of the denotations by ABNER and showed said recordings to ATF Agents. Your Affiant has seen both videos and they depict what Witness #3 describes. An ATF Certified Explosive Specialist viewed the videos and opined that the devices may be destructive devices. Witness #3 identified Building #2 as the location where ABNER went to retrieve the devices.

17. Witness #3 stated after ABNER detonated the "pipe bombs," ABNER went into a Building #2 at the Search Location and retrieved two objects that ABNER referred to as "homemade rifles." Witness #3 stated that one barrel was metal and one was PVC pipe. Witness #3 described these objects having a long barrel similar to a rifle barrel and a basic trigger mechanism. ABNER told Witness #3 these objects were "muzzleloaders," referring to a firearm where the projectile and the propellant charge is loaded directly into the muzzle of the firearm. ABNER told Witness #3 he made the firearms and used black powder as the propellant charge for the "homemade rifles." Witness #3 observed ABNER load black powder into the muzzle of the firearm and discharge (shoot) the firearm toward a wooded area behind a building located at the Search Location. ABNER repeated the loading and shooting of the second "homemade rifle." ABNER told Witness #3 that, along with manufacturing the rifles, ABNER was going to begin manufacturing ammunition.

18. In addition to the aforementioned destructive devices and rifles, Witness #3 stated he/she has seen ABNER in possession of an "old" revolver, a semi-automatic pistol, and a hunting rifle. Witness #3 advised that ABNER maintains possession of a least one firearm at all times – either a handgun or a rifle. Witness #3 stated inside the Search Location, ABNER has a sleeping area in a small room with a metal door. Witness #3 observed an additional "homemade rifle" on a shelf inside

the room, with the barrel pointed at the entrance into the room. ABNER told Witness #3 the homemade rifle was positioned as his "first line of defense" into his sleeping area.

19. On or about January 19, 2019, the juvenile son of ABNER was found deceased of an apparent suicide at a home in Sullivan County, TN. Witness #1, #2 and #3 advised that ABNER became further distraught and emotionally unstable upon the death of his son. ABNER began making threats of violence to and against members of his former spouse's family and stating that these acts would include the use of firearms and explosives, and would occur during the memorial service for his son, which is announced to occur on February 2, 2018.

20. On or about the 20th of January, 2019, Witness #3 learned of the death of ABNER's son and immediately went came to Tennessee. Similar to the December 4, 2018, visit, Witness #3 went to the Search Location to console ABNER. Witness #3 made contact with ABNER and they (Witness #3 and ABNER) went to visit Witness #4 at a residence located in Sullivan County, TN.

21. Witness #4 confirmed the following, essential facts and information provided by Witness #3 about the events that occurred on or about January 20, 2019.

    a. Witness #3, Witness #4 and ABNER left the residence and spent the evening together riding in Witness #3's vehicle, stopping occasionally to visit other individuals attempted to console ABNER. At the end of the night, they (Witness #3, #4 and ABNER) began driving back toward the Search Location. During the drive, Witness #4 was the driver of the vehicle, Witness #3 was the front seat passenger and ABNER the only rear passenger. At some point during the drive, ABNER asked, "what would you do if I just fucking killed you?" Witness #3 and Witness #4 believed ABNER to be joking and dismissed the threatening question. A few moments later, ABNER took Witness #3's seatbelt and suddenly wrapped it around Witness #3's neck and began choking him/her. Witness #3 and Witness #4 struggled with ABNER, but were able to remove

the seatbelt from Witness #3's neck. Witness #3 and Witness #4 began yelling at ABNER, who apologized. ABNER began making erratic references to wanting to "blow them up" and then kill himself.

b. Witness #4 kept driving toward the Search Location while Witness #3 attempted to calm ABNER down. After a few minutes, ABNER attempted to open the vehicle door next to Witness #3 and push Witness #3 and himself out of the vehicle while moving along the highway. Again, Witness #3 and Witness #4 struggled with ABNER to shut the car door and continue traveling toward the Search Location. During the approximate twenty-minute drive back to the Search Location, ABNER continued to make statements of "shooting," "killing," and "blowing up" members of his former wife's family that he blamed for the death of his former spouse and son.

c. After arriving at the Search Location, ABNER asked Witness #3 and Witness #4 if they would stay at Building #1 and visit with him more. ABNER exited the vehicle and said he was going into Building #2 of the Search Location to get something to show Witness #3 and Witness #4. Witness #3 was aware of the contents of Building #2, to include firearms and explosive devices, so as soon as ABNER entered Building #2 of the Search Location, Witness #4 quickly drove away with Witness #3.

22. Witness #5 confirmed for your Affiant that ABNER resides in the back room of a fireworks factory off of I-81, which is consistent with the business use and setting of the Search Location.

23. A query of ATF's Federal Firearms Licensing System database revealed ABNER has no license to manufacture firearms or destructive devices, and is not authorized to make or possess destructive devices under the National Firearms Act.

24. Court judgments reflect that ABNER is a convicted felon, having been convicted of the felony offenses of two counts of Theft, a fourth degree felony in Ohio, as well as a conviction in the Sullivan County General Sessions Court of Kingsport, for assault involving force against a former spouse with whom he has a child. Federal law prohibits a person who is a convicted felon from receiving or possessing firearms, ammunition, or explosives that have been shipped or transported in or affected interstate or foreign commerce. Federal law prohibits as person who is convicted of a misdemeanor crime of domestic violence from possessing firearms or ammunition that have been shipped or transported in or affected interstate or foreign commerce. ABNER is prohibited from possessing firearms, ammunition, and explosives.

25. Based on training, experience, and consultation with ATF Certified Explosive Specialists (CES), explosive disposal technicians and other industry experts, your Affiant knows the main propellant charge for consumer fireworks, like those that are stored at the Search Location, is black powder, a substance classified as a low explosive. Your Affiant also knows that rudimentary destructive devices and/or "pipe bombs" are objects filled with a propellant charge, such as black powder, and can be detonated using a fuse manipulated from a consumer firework.

26. Your Affiant also knows that firearms and evidence of firearms manufacturing are not perishable or consumable, and as such, can be maintained at a location for an extended period of time.

WHEREFORE, your Affiant respectfully submits that there is sufficient probable cause to believe that there is evidence of the illegal possession of ammunition and firearms, in violation of 18 U.S.C. §§ 922(g)(1) and (9), the illegal making and/or possession of unregistered, and unserialized firearms, in violation 26 U.S.C. §§ 5861(c), (d), (f), and (i), and the illegal possession of explosives, in violation of 18 U.S.C. § 842(i) at the Search Location described in this affidavit. Your Affiant respectfully requests that the Court issue a warrant authorizing the search of the described Search Location, including any and all outbuildings or storage containers on the curtilage,

for all firearms, ammunition, and explosive materials. Furthermore, your Affiant has only used that information necessary to establish probable cause and inform the court of pertinent information related to the request for search authorization.

_____
Cameron L. Miller, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and Sworn to before me
On January 30, 2019

_____
CLIFTON L. CORKER
United States Magistrate Judge



